You may proceed. Good morning, Your Honors. May I please the court? My name is Ivo Genchev, and I'm here for Petitioner Gina Prado-Aquino and her daughter, Sarah. Before I start, I would like to reserve three minutes for rebuttal. We are here today to challenge the Board of Immigration Appeals' affirmance without opinion of the immigration judge decision in this particular case. The Board's affirmance without opinion failed to address key issues raised in the appeal. By affirming the IJA decisions, the decision of the immigration judge became the final ruling of the Board without its deficiencies. Under the regulations, the Board may affirm a decision without an opinion if the decision is based on fighting of fact or conclusion of law that is supported by the record and is not erroneous. Here, the immigration judge decision fails to address significant testimony evidence, and the Board's silence on these issues has led to a grave injustice for Petitioner, hence facing removal from the United States to Honduras. The testimonial evidence that Petitioner gave was ignored by the immigration judge and the Board, despite the relevance of that evidence. As such, the decision of the immigration judge is clearly erroneous.  The immigration judge decision that he considers that there is no past persecution, that there is no protected ground, and that there is no nexus. The immigration judge, in his legal analysis, never addressed three key points in this case. He never analyzed the shooting at the house of Petitioner. That's number one. Number two, he never analyzed the robbery that happened at the house of Petitioner and the shooting when the gang members were leaving the house. And the main one, and the crucial one, in my opinion, is when Petitioner was tried to be silenced by being rolled over by a car. So what is the evidence on record that these incidents that occurred were motivated by your client's political views? Your Honor, I believe the client never paid the money to the gangs. There were three gangs that were extorting. There were two gangs that were extorting Petitioner. The third gang never extorted and never asked for money. The first, the gang that Los Cholos, they were the gang that fired shots in front of the house and in front of the cyber cafe, like the business owned by the family. The second one, Los Pelones, which were, I guess, the worst one in the case, they killed five members of her family. They killed the uncle, they killed three cousins, and they disappeared. A fourth one. And until today, nobody knows where he is. All that happened 15 or 20 times per testimony, which means Petitioner, when she was asked by the immigration judge if she ever paid, she said, I never paid any money. She even went after the incident at her house to report that to the police. Do you have a question about how to read the IJ's decision? Yes. Because the discussion of Nexus occurs under a heading that says, well-founded fear of future persecution. But the discussion of Nexus refers to the lack of Nexus in her past experiences. Do you construe this decision as essentially finding no Nexus, both as to the past and as to the future? Or how do you read it? The way I read it, Your Honor, is I believe there is past persecution. If there is past persecution, there is presumption for future persecution. And the Nexus element is, during the testimony, respondent Petitioner testified that the last gang that she had an encounter with. I understand. I'm not asking you what you think the board should have done. I'm asking you what you think the board did do. Did it make a finding in this discussion that there was no Nexus as to her past experiences? Yes, they did. OK. But I think. Did you, I think the government argues that you've waived any challenge to the Nexus. Can you point us to where in your briefs you've developed a challenge to the Nexus claim as opposed to the persecution claim? Your Honor, I think the Nexus claim stems from the facts of the case. The last gang that actually gave the notice, the note, that they left a note. And they told her that she has to stop being involved with the National Party, that the party is something that they don't agree with. In her testimony, she testified. She wasn't certain, but she didn't say I didn't know. She said the gang that hit me, she thought were part of that gang, Los Grios. And president of this court and BIA, when you're intentionally trying to hit somebody with a car, with a vehicle, it's past persecution. And in this case, it's exactly what happened. But the immigration judge, in his analysis, he never analyzed that material, very substantial evidence and fact, which I think if he has done so, he can find Nexus. And he would rule as we see it. What's the connection between the note and the incident with the car? What's the best connection you draw between those two? The best connection for me is that first, Los Grios never asked for money. And that's what a petitioner said, compared to the other two gangs. Second, allegedly, they left the note to her house. And the third one is, when she was asked in her testimony to explain if being a member of the National Party did that, in a certain way, harm her, she said, yes. The neighborhood, they didn't like her. They didn't talk to her. In her written declaration, there is a half-page statement saying that she was really active in that National Party. They used to have meetings at the husband's uncle house. Did you want to save some time for rebuttal? Yes, Your Honor. Thank you. Thank you. All right. We'll hear now from Mr. Kemp. Good morning, Your Honor. As you may please the Court, David Kemp for the Attorney General. At the outset, I'd like to address the due process claim that was just raised. Now, Petitioner's counsel notes that the board's opinion was affirmed without opinion. Now, it's well set of law that the board can do this, that it has authority to do this. And so that's not the issue here. It seems that their claim is that the underlying IJ's opinion was not based on facts reported by the record. And he points out a number of incidents, the shooting, the robbery at the house, and the swerving car. But those facts were actually recounted pretty specifically in the factual summary of the IJ's decision. The note obviously has a nexus on its face to political opinion. So how do you see that portion of it interacting with the no-nexus finding as to the other portions? Well, with regard to the note, it's an anonymous note. And simply, there weren't enough details in her testimony for us to glean any idea of what the motive might have been. Now, we do know from the face of the note that it had something to do with her affiliation to the party. But really, all the note said was that, you know, your party is excrement and shit. And beyond that, it didn't really go into detail about her involvement with the party. And so it could have been a prank, could have been perhaps someone from the rival opposing party, perhaps. What did the agency say about it? What did the agency say about it? We can only consider what the agency did with it. What did it do with the note, and how does that fit with the rest of its analysis? Well, the agency found that the note wasn't sufficient to actually allow the petitioner to sustain her burden for a nexus. And to go to your question as to whether, to the panel's question about whether that goes to past persecution or will find a fear of persecution, the government will argue that it goes to both because both claims would be founded on the same body of evidence. And so, yes, the nexus claim might have been considered within the four corners of perhaps the well-founded fear section. But that doesn't preclude from actually applying to the past persecution finding as well. And so it kind of cuts across the board, would be our position. And what's the, I guess, the authority you'd point to that would allow us to mix and match the IJ's discussion of one element of the claim with another for purposes of the nexus? Are we saying that it's harmless, that we have cases that say that the IJ would likely to reach the same conclusion again? Is it just a generous reading of it? How do you want us to read that misplacement of the nexus determination? Well, it's what I just mentioned about how, you know, the claim is basically rests on the same body of evidence. And so as far as we know, her fear of these gangs, I mean, that's the basis for her past persecution claim. It's also the basis for why she feels returning to Honduras. And so it's basically that logic, that reasoning that leads us to say that even though it was in the well-founded fear section, it could still go to the past persecution finding. Do you have any cases where we have done that, or we've read IJ opinions in that way? Because I mean, here it just doesn't, it only seems to address future persecution on its face. Off the top of my head, Your Honor, I can't provide you any citations. We'd be happy to follow up, of course. But, you know, even if the patent order fine that doesn't actually go to the past persecution finding, that's not a problem for the government because there is the separate issue of the severity of past harm. And that by itself is dispositive. And so, so long as the court agrees with the government that she didn't meet her burden there, the government would prevail. Well, but, you know, that's a little bit tougher because she says she was robbed on multiple occasions. She was grazed in an attempt to hit her with a car. And that gets into the whole, what's the standard of review for rise to the level of persecution, which we have an internal circuit split on that issue. That seems a lot more difficult of an issue. Before I pivot to the standard of review question, I would like to touch on perhaps, you know, the merits of the severity of harm question. And so I think the court's, the rubric the court laid out in Sharma is helpful here. And now this is not an exhaustive list, but the court did run through seven factors that the court could rely on in assessing these sorts of claims. And the first one, and perhaps the most significant one is physical violence. And now she's pretty clearly said that there was no physical harm suffered other than some scratches from when she jumped out of the way of the swerving car. And so this is a case that, where no physical violence was present with whoever. But if we were to go into some other factors of including length and quality of detention or harm to family members or close friends, there really isn't much there. Now, she did mention that she had an uncle and three cousins who were killed, but that seems to all be related to the uncle's operation of a taxi business. And it didn't have really anything to do with her or in the cyber cafe business that she ran with her husband. Now to pivot to the standard review question, I've read your concurrence in FON, Ms. Collins, and I understand what you mean by perhaps, Google applying some sort of gloss on US Bank. But in Wilkinson, the Supreme Court was quite clear that when you have a primarily factual mixed question, and the court didn't break things down into the legal and factual components. It just said, if you have a mixed question that's primarily factual, then a different standard should be applied. Now, I think it's significant the court said that because in that case, which is a cancellation case, so a different context, the courts actually don't have jurisdiction over those factual elements. And so all the Supreme Court really was concerned about was what standards should be applied to those legal elements. And yet, even in that case, the Supreme Court went on to say that because of those factual elements over which there is no judicial review, even to the legal elements, a more deferential standard should be applied. Now, in the asylum context, all of that's fair game. All that comes into play when it comes to the standard of review, the legal and the factual elements. And those two categories are, we would say, inextricably intertwined. They're very much bound up with each other. And so if there was no real cause to find that, something like the NOVA review should be applied in the cancellation context, I think that logic is even stronger in the asylum context where the factual questions loom even larger, possibly. How would you draw that line, I guess, on this record, though, where we're trying to establish whether the behavior is persecution? So, fact or law? Right, so, I mean, we would say this is a standard case where you have a number of incidents, right? And these incidents have to be sort of weighed for their salience, for their relative weight to each other. And they also- There's no real dispute in the record about the incidents. Oh, no, right, about what actually happened. I mean, we're not doubting our credibility, but still, I mean, in terms of how much weight they should be accorded, that's a factual determination. They also have to be considered in the aggregate or the composite. And that's something that the fact finder would be better equipped to do than this court. You can make the example, you know, this case a little starker, because I think to some extent, you know, the impression of it is affected by the fact that, you know, the nexus showing as to the earlier mistreatment is relatively weak, and it's just a question of whether or not the agency relied on nexuses to pass persecution. But suppose that all of that she went through had been explicitly based on, say, her race or her religion, and she's being repeatedly robbed, she's being extorted. It gets so bad, she has to shut down the business. They try and run her over with a car. We're really gonna say that that's not persecution? It seems hard to say. So this is actually discussed in the government's brief, but we did provide a number of case citations where perhaps more extreme conduct was still not found to rise to the level of persecution. And so just to point out a few, you have the case of Gu, where there was detention, there was a beating, there was interrogation, and yet there was no past persecution there. There's a case of Kumar where the police entered the petitioner's home, punched her in the face and stomach. There were bruises, verbal abuse, there was even detention. But even in that case, there was no past persecution found. And so, yes, there were a string of robberies and threats in this case, but they all seem to be directed at the cyber cafe where she worked. And really, I mean, this is critical. This is a critical point that she did not suffer any physical violence other than the scratches. And that really is the first fact that this court often does look at when determining the past persecution inquiry. And so we're not trying to downplay or discount the fact that there was a swerving car that might have been directed at her. RECA's not entirely clear on that, and that there were some shootings, but the shootings were outside the home, they were outside the business. And so it's not even clear that she was a target at all. And so considering the aggregate and also considering individually, there just isn't enough there for her to sustain her burden as to severity of past harm. So if there are no other questions, we'll rest on the brief. Thank you so much. Thank you, counsel. So we'll hear a little now from Mr. Genship. Just a few quick points, Your Honor. My colleague here stated that shooting at the house because it's outside doesn't raise to the level of persecution. I disagree with that. The shooting was towards the house. Also, he's mentioning that if there is no physical harm, it's kind of difficult to prove past persecution, which is not true, because considering all the evidence, as Your Honor stated, like in the span of three or four years, she was constantly under pressure by the gangs, but she never came. She never did what probably 90% of Hondurans do, and they start paying tax just not to get killed. And moreover, if I remember correctly, there is a case where one is forced to leave their own country because their life is in danger. That's considered persecution. I think the case is Fonseca. I don't remember the name now, but a respondent, a petitioner, never paid any of the money asked, and she actually filed a police report. She was proactive. So reading all that and looking at the whole events that happened, I believe, and I have experience doing immigration law, there is past persecution in this case. Thank you, Your Honor. All right, thank you, counsel. The case just argued will be submitted.
judges: COLLINS, THOMAS, JOHNSTONE